Argued April 16; affirmed April 29, 1941

# BAKER *v.* CASEY
### (112 P. (2d) 1031)

Before KELLY, Chief Justice, and BAILEY, LUSK and RAND, Associate Justices.

*Frank B. Reid* and *Clyde N. Johnston*, both of Eugene, for appellant.

*H. E. Slattery*, of Eugene, for respondent.

RAND, J.  Plaintiff brought this action to recover the damage resulting to her from certain alleged false and fraudulent representations of the defendant by which the plaintiff was induced to exchange her house and lot in Eugene, Oregon, for other real property belonging to the defendant in Los Angeles county, Cali-

fornia. Plaintiff, at the time, was a resident of Eugene and unfamiliar with defendant's property. The representations were in respect to the location of the property and the kind, character and condition of the buildings thereon.

The cause was tried to a jury and a verdict was rendered in favor of the plaintiff for the sum of $2,500. From the resulting judgment, the defendant has appealed.

At the close of plaintiff's case in chief, the defendant moved for a judgment of involuntary nonsuit. This motion was overruled and defendant assigns this ruling as error. The ground upon which the motion was based was defendant's contention that the complaint failed to state a cause of action. No demurrer to the complaint was filed and the objection was urged at the close of plaintiff's case in chief.

■■ It is settled by an unbroken line of decisions in this state that, to constitute actionable fraud based upon misrepresentations, it must appear that the defendant made a material representation falsely, knowing that it was false, or that he made it recklessly without knowledge of its truth and as a positive assertion with the intention that it should be acted upon, and that plaintiff acted in reliance upon it to his injury. In substance, the complaint alleges that the representations made by the defendant were material and false and were known by him to be false when made and that the plaintiff, without knowledge of their falsity and in reliance upon such representations, was induced to exchange her property for that of the defendant. This clearly stated a good cause of action against the defendant.

■ Defendant also contends that, since the complaint failed to state the existence of a fiduciary rela-

tionship between the plaintiff and defendant, the complaint is not good. It is conceded that no such relationship existed between the plaintiff and the defendant at the time these representations were made. In order to maintain the action, it was, of course, necessary for the plaintiff to establish that she believed these representations to be true and that, because of such belief, she acted to her injury, but it was not necessary for her to allege the existence of a fiduciary relationship in order to entitle her to relief. If such were the law, then no person, in the absence of such relationship, could maintain an action against another for a fraudulent representation which induced him to act to his detriment. The law places no such limitation upon the right of a defrauded party to maintain an action for damages because of the defendant's fraud. Hence, we hold that the motion was properly denied.

The evidence shows that, in reliance upon defendant's representations, two contracts were entered into between the plaintiff and defendant, in the second of which it was recited that ''the Second Party (plaintiff) herein, or her duly authorized Agents, have inspected the Los Angeles property last above described, and has satisfied herself as to the value and condition thereon, and in making this transfer, the said Second Party is not relying upon any representations of the First Party herein or his agents as to the value or condition of said property''. In her reply thereto, the plaintiff alleged that she did not read this contract and ''that the defendant pretended to read it to her, and omitted reading'' that part of the contract referred to in defendant's answer.

The evidence shows that the plaintiff was quite old, her husband was dead, and she was unaccustomed

to business transactions and that at the time she signed said contract, or a short time theretofore, she had been suffering from a paralytic stroke. On the witness stand, she testified to the effect that the defendant had prepared this contract and that before she signed it the defendant had read it to her and had omitted to read the portion referred to and that, by reason thereof, she signed the contract, not knowing that said recital was contained in it.

The question of whether the defendant had fraudulently omitted the reading of that recital in the contract was submitted to the jury under proper instructions of the court to which no exception was taken. That issue thus raised by the pleadings was settled in plaintiff's favor by the verdict of the jury.

██ It is, of course, well settled that a purchaser must use reasonable care for his own protection, and should not rely blindly upon statements made by a seller, and that, between parties dealing at arms' length, where no fiduciary relationship exists and no device or artifice is used to prevent an investigation, it is the general rule that a purchaser must make use of his means of knowledge, and, failing to do so, he cannot recover on the ground that he was misled by the seller.

█ The contract in question was signed in Eugene, Oregon, and plaintiff had had no opportunity to inspect the property which the defendant agreed to convey to her. The rule last referred to was, therefore, inapplicable under the facts proved in this case.

█ Defendant makes the further contention that plaintiff's remedy was a suit for rescission and, not having pursued that remedy, this action cannot be maintained. It is often said that fraud avoids all contracts. Ordinarily, however, a contract induced by fraud is not

void but merely voidable at the option of the party injured by the fraud. See 12 Am. Jur. p. 638. Where there is such fraud as renders the contract voidable, the defrauded party, upon discovering the fraud and provided the rights of third persons have not intervened, may elect to rescind the contract, which, of course, would be a disaffirmance of the contract, or he may affirm the contract, keep what he has obtained under it and sue for damages, as was done in the instant case.

In *Scott v. Walton*, 32 Or. 460, 52 P. 180, the rule applicable to the facts in the instant case and governing the rights of the defrauded party was stated by Mr. Justice ROBERT S. BEAN as follows:

"A party who has been induced to enter into a contract by fraud, has, upon its discovery, an election of remedies. He may either affirm the contract, and sue for damages, or disaffirm it, and be reinstated in the position in which he was before it was consummated. These remedies, however, are not concurrent, but wholly inconsistent. The adoption of one is the exclusion of the other. If he desires to rescind, he must act promptly, and return or offer to return what he has received under the contract. He cannot retain the fruits of the contract awaiting future developments to determine whether it will be more profitable for him to affirm or disaffirm it. Any delay on his part, and especially his remaining in possession of the property received by him under the contract, and dealing with it as his own, will be evidence of his intention to abide by the contract: * * * (citing authorities)."

The principle announced in that case has been followed uniformly by this court in so many cases that it is not necessary to cite any other case in support thereof.

Finding no error, the judgment appealed from is affirmed.